No. 14-1406

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

BRIAN K. SMITH

        Plaintiff-Appellant

and

UNITED STATES OF AMERICA EX REL. BRIAN K. SMITH

        Plaintiff

v.

CLARK/SMOOT/RUSSELL, a Joint Venture; CLARK CONSTRUCTION
GROUP, LLC; SMOOT CONSTRUCTION COMPANY OF WASHINGTON,
D.C.; H.J. RUSSELL AND COMPANY, INC., a/k/a H.J. Russell and Company;
SHIRLEY CONTRACTING COMPANY, LLC; SHIRLEY CONTRACTING
COMPANY, LLC, d/b/a Metro Earthworks; SHELTON FEDERAL GROUP,
LLC; SHELTON/METRO, a Joint Venture; HSU DEVELOPMENT, INC.; HSU
DEVELOPMENT, INC., d/b/a HSU Builders

        Defendants – Appellees

Appeal from the United States District Court for the District of Maryland
(Greenbelt Division)

---

## BRIEF FOR APPELLANT

---

Jerry A. Miles, Esq.
jmiles@dealeservices.com
DEALE SERVICES, LLC
One Research Court, Suite 450
Rockville, MD 20850
Tel. 240-475-2750
*Counsel for Plaintiff-Appellant*

No. 14-1406

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

BRIAN K. SMITH

          Plaintiff-Appellant

and

UNITED STATES OF AMERICA EX REL. BRIAN K. SMITH

          Plaintiff

v.

CLARK/SMOOT/RUSSELL, a Joint Venture; CLARK CONSTRUCTION GROUP, LLC; SMOOT CONSTRUCTION COMPANY OF WASHINGTON, D.C.; H.J. RUSSELL AND COMPANY, INC., a/k/a H.J. Russell and Company; SHIRLEY CONTRACTING COMPANY, LLC; SHIRLEY CONTRACTING COMPANY, LLC, d/b/a Metro Earthworks; SHELTON FEDERAL GROUP, LLC; SHELTON/METRO, a Joint Venture; HSU DEVELOPMENT, INC.; HSU DEVELOPMENT, INC., d/b/a HSU Builders

          Defendants – Appellees

Appeal from the United States District Court for the District of Maryland
(Greenbelt Division)

---

## BRIEF FOR APPELLANT

---

Jerry A. Miles, Esq.
jmiles@dealeservices.com
DEALE SERVICES, LLC
One Research Court, Suite 450
Rockville, MD 20850
Tel. 240-475-2750
*Counsel for Plaintiff-Appellant*

ii

## PLAINTIFF-APPELLANT'S RULE 26.1
## CORPORATE DISCLOSURE STATEMENT

Plaintiff-appellant Brian K. Smith is a natural person. As such, a corporate disclosure statement is not required. FED. R. APP. PROC. 26.1(a).

# TABLE OF CONTENTS

Table of Authorities ................................................................................. vi

Preliminary Statement .............................................................................. 1

Jurisdictional Statement .......................................................................... 2

Statement of Issues Presented for Review ............................................. 2

Statement of the Case .............................................................................. 3

   1.   Facts Relevant to the Issues Submitted for Review ..................... 3

   2.   Relevant Procedural History ......................................................... 9

   3.   Rulings Presented For Review .................................................... 11

Summary of the Argument ..................................................................... 12

Standard of Review ................................................................................ 14

Argument ................................................................................................ 14

   I.  District Court's Dismissal of Complaint with Prejudice for Alleged Seal Violation was in Error and an Abuse of Discretion. .................................... 14

      A.   Alleged Seal Violation is a Factual Dispute Not Properly Decided on Motion to Dismiss. ............................................................. 15

      B.   FCA's Seal Provision is Not Jurisdictional and Dismissal of the Complaint is Not Appropriate Where Seal Violation Does Not Frustrate Purpose of the FCA. ............................................. 16

      C.   District Court's Failure to Consider Less Severe Sanctions was Abuse of Discretion. ............................................................. 19

   II. District Court Properly had Jurisdiction over False Claims Act claims, and Dismissal of FCA claims for lack of jurisdiction was in error. .................... 22

      A.   Davis-Bacon Act Violation May Form the Basis of a False Claims Act Claim. ............................................................. 23

      B.   FCA Claim satisfies pleading requirements. ....................................... 28

C.    District Court's Denial of Oral Motion for Leave to Amend Pleadings was Abuse of Discretion. .................................................................... 31

III.    The District Court erred in finding that there was no sufficient allegation of a retaliation claim under the False Claims Act in Count 4 ..................................................................................................... 31

IV.    The District Court's Order Awarding Costs to Defendants Constituted an Error of Law and Abuse of Discretion ........................................... 35

Conclusion .......................................................................................... 37

TABLE OF AUTHORITIES

CASES

*Eberhardt v. Integrated Design & Constr., Inc.,*
 167 F.3d 861 (4th Cir. 1999) ............................................................ 32

*Erickson ex rel. United States v. Am. Inst. Of Biological Scis.,*
 716 F.Supp. 908 (E.D. Va. 1989) .............................................. 17, 18

*Erickson v. Pardus*, 551 U.S. 89, 93 (2007) .................................... 15

*Harrison v. Westinghouse Savannah River Co.,*
 176 F.3d 776 (4th Cir.1999) ............................................................ 16

*Lujan ex rel. United States v. Hughes Aircraft Co.,*
 67 F.3d 242 (9th Cir. 1995) ............................................ 14, 16, 19, 20

*Mylan Labs., Inc. v. Matkari,*
 7 F.3d 1130 (4th Cir. 1993) ........................................................ 14, 15

*Neal v. Honeywell, Inc.,*
 33 F.3d 860, 864 (7th Cir. 1994) .................................................... 32

*Partington v. Am. Int'l Specialty Lines Ins. Co.,*
 443 F.3d 334 (4th Cir. 2006) ............................................................ 14

*Pierce v. Underwood,*
 487 U.S. 552 (1988) ........................................................................... 14

*Suter v. United States,*
 441 F.3d 306 (4th Cir. 2006) ............................................................ 14

*United States ex rel. Fellhoelter v. ValleyMilk Prods., L.L.C.,*
 617 F.Supp.2d 723 (E.D. Tenn. 2008)............................................. 17

*United States ex rel. Hopper v. Anton,*
 91 F.3d 1261 (9th Cir. 1996), cert. denied, 519 U.S. 1115 (1997)   32, 33

*United States ex rel. Howard v. Lockheed Martin Corp.,*

2014 WL 1612165 (S.D. Ohio March 25, 2014)................................. 29

*United States ex rel. Int'l Bhd. of Elec. Workers, Local Union No. 98 v. The Farfield Co.*,
2013 WL 3327505 (E.D. Pa. July 2, 2013) ....................................25-27

*United States ex rel. Le Blanc v. ITT Indus., Inc.,*
492 F.Supp.2d 303 (S.D.N.Y. 2007) ..................................................... 17

*United States ex rel. Milan v. Regents of the Uni. of Cal.*,
912 F.Supp. 868 (D. Md.1995)............................................................ 20

*United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.,*
707 F.3d 451 (4th Cir. 2013) ........................................................ 28, 30

*United States ex rel. Pilon v. Martin Marietta Corp.*,
60 F.3d 995 (2d Cir. 1995) ................................................................... 16

*United States ex rel. Ubl, v. IIF Data Solutions, et al.*,
2009 WL 1254704 (E.D. Va. 2009) .............................................. 16, 20

*United States ex rel. Wall v. Circle C Constr., L.L.C.*,
697 F.3d 345 (6th Cir. 2012) ....................................................24-25, 29

*United States ex rel. Windsor v. DynCorp, Inc.*,
895 F.Supp. 844 (E.D. Va. 1995) ................................................22-25

*United States ex rel. Yesudian v. Howard Uni.*,
153 F.3d 731 (D.C. Cir. 1998)............................................................ 33

**STATUTES**

28 U.S.C. § 1291 ...................................................................................... 2

28 U.S.C. § 1331 ...................................................................................... 2

28 U.S.C. § 1367 ...................................................................................... 2

31 U.S.C. § 3729 .................................................................................... 28

31 U.S.C. § 3730 ................................................................ 15, 31, 34

40 U.S.C. § 3141, *et seq.* (Davis-Bacon Act) ...................................*passim*

## OTHER AUTHORITIES

29 C.F.R. § 5 ........................................................................ 23

FED. R. CIV. PROC. Rule 9(b) ....................................................... 28

FED. R. APP. PROC. Rule 4........................................................ 2, 10

FED. R. APP. PROC. Rule 26.1(a) ....................................................iii

FED. R. APP. PROC. Rule 28........................................................ 10

FED. R. APP. PROC. Rule 30........................................................ 10

FED. R. APP. PROC. Rule 32........................................................ 10

PRELIMINARY STATEMENT

On appeal, this case revolves around two primary issues. The first is whether the District Court properly had jurisdiction over Plaintiff-Relator's *qui tam* action, where there was an alleged violation of a False Claims Act procedural requirement to remain under seal. The second is whether Plaintiff-Relator can assert claims under the Federal False Claims Act which resulted from the Defendants' false certifications that it complied with the Davis-Bacon Act, 40 U.S.C. § 3141, *et seq.* ("DBA" or "Davis-Bacon Act"). Appellants submit that the answer to both is yes, and that the District Court erred and in finding otherwise.

Simply, Smith's employers were required to pay him in accordance with applicable DOL wage determinations. Defendants knowingly paid the appellant less than the required wages, overtime and fringe benefits required for his work on the various contracts, which violated the DBA. Next, Defendants submitted certified payrolls to the government, which falsely certified that Defendants were paying their employees in accordance with the DBA. Compl. ¶¶ 2, 36, 40, 45, 48, 55, 59, 92 (Joint Appendix ("J.A.") 0017, 0023, 0025, 0027, 0028, 0031, 0033, 0045). Case law has made it clear that such false certifications, which result in the government paying the Defendants, create liability under the False Claims Act. Finally, Defendants retaliated against Smith for inquiring into the improper wages,

1

and participating in an investigation led by the Smithsonian into potential wage violations.

## JURISDICTIONAL STATEMENT

The United States District Court for the District of Maryland – Greenbelt Division, had subject-matter jurisdiction over the case below regarding federal claims pursuant to 28 U.S.C. § 1331, and had supplemental subject matter jurisdiction regarding one or more related claims pursuant to 28 U.S.C. § 1367.[1]

This is an appeal from a final judgment of the District Court, entered on March 31, 2014. (J.A. 0412). Pursuant to the Federal Rules of Appellate Procedure, Rule 4, Notice of Appeal was timely filed on April 23, 2014. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

Plaintiff-Appellant submits the following issues for appeal:

1.      Whether the District Court's Dismissal of the Complaint with Prejudice for Alleged violation of the Seal was in error and an abuse of discretion;

---

[1] Plaintiff/Appellant does not appeal the dismissal of the counts within the supplemental jurisdiction of the District Court, specifically Counts V and VI (under the District of Columbia False Claims Act), and Count X (under the District of Columbia Wage Payment and Wage Collection Law) (*See* Compl. at 7-8) (J.A. 0020-0021).

2

2.    Whether the District Court properly had subject matter jurisdiction over the False Claims Act Claims (specifically Counts 1, 2 and 4), and whether Dismissal of those claims for lack of jurisdiction was in error; and

3.    Whether the District Court erred in finding that there was no sufficient allegation of a retaliation claim under the False Claims Act in Count 4 of the Complaint.

Plaintiff-Appellant is limiting the issues on Appeal, and is not appealing dismissal of Count 3 (Conspiracy to Present False Claims, Records and Statements), Count 5 (Knowingly Presenting False Claims to the District of Columbia), Count 6 (Violation of the District of Columbia False Claims Act Anti-Retaliation Provisions), Count 7 (Violation of Contract Work Hours and Safety Act), Count 8 (Violation of Fair Labor Standards Act), Count 9 (Violation of Fair Labor Standards Act Anti-Retaliation Provision), and Count 10 (Violation of the District of Columbia Wage Payment and Collection Law).

## STATEMENT OF THE CASE

1. Facts Relevant to the Issues Submitted for Review. [2]

Plaintiff-Appellant Brian Smith was a construction worker employed on several large construction contracts at issue; the City Market on O Street ("City Market") Project, the Smithsonian Institution's National Museum of African

---

[2]  Plaintiff/Appellant incorporates and reasserts all facts alleged in the Appendix.

American History and Culture ("Smithsonian NMAAHC"), and the Smithsonian

National Zoo Project ("National Zoo Project").  Compl. at 4, 8 (J.A. 0017, J.A.

0021).  Smith was employed directly by Defendant Shirley Contracting Co. d/b/a

Metro Earthworks ("Metro"), as defined in the Complaint,[3] and at various times

worked on all three relevant Contracts.  Compl. at 4 (J.A. 0017). The Davis Bacon

Act applied to all three Contracts, and thus all were subject to applicable Davis-

Bacon wage rates.[4]  Compl. at 11-12 (J.A. 0024-0025).

A. City Market

Defendant Clark was the prime contractor for the City Market project, and

subcontracted portions of work to Metro.  Compl. at 8 (J.A. 0021). Metro

employed Brian Smith on the City Market project from April 2012 until August

25, 2012.  Compl. at 13 (J.A. 0026).  Smith, at various times on this project,

performed work in the following defined labor categories:  Bobcat operator,

---

[3] All Defendants and their relationships are defined in the Verified Complaint,
paragraphs 3 through 16 (J.A. 0017-0019).

[4] The Davis-Bacon Act, 40 U.S.C. § 3141, *et seq.*, requires, among other things,
that contractors and subcontractors pay their laborers employed under any covered
contract no less than the locally prevailing wages (i.e., basic rates of pay and fringe
benefits) on federal construction contracts. The Davis-Bacon Act applies to
contractors and subcontractors performing on federally funded or assisted contracts
in excess of $2,000 for the construction, alteration, or repair (including painting
and decorating) of public buildings or public works.  Compl. at 10 (J.A. 0023);
Opp'n to Defs.' Mot. to Dismiss at 7 (J.A. 0279) . The Davis-Bacon Act was
expressly incorporated into the Contracts. Compl. ¶ 48 (J.A. 0028).

Jackhammer operator, Roller (trench) and Flagman.  Compl. ¶ 42 (J.A. 0026).

Smith also worked overtime in all these positions.  *Id.*  Although the Davis-Bacon

wage rates, overtime rates, and fringe rates for these labor categories were all pre-

determined, Smith's employer never paid him in accordance with the required

Davis-Bacon wage, fringe and overtime rates for his work on the City Market

Contract.  In fact, Metro paid substantially less than the standard and overtimes

rates, and paid no fringe whatsoever, as illustrated on the summary chart on page

39.[5]

B. Smithsonian NMAAHC

Defendant Clark/Smoot/Russell, Joint Venture ("CSR JV") was awarded a

contract to perform heavy construction and other construction services on the

Smithsonian NMAAHC contracts.  Compl. ¶ 31 (J.A. 0022).  CSR JV

subcontracted various lower tier heavy construction services to subsidiary divisions

of Clark, including Shirley and Metro, to perform at the Smithsonian NMAAHC.

Compl. ¶ 32 (J.A. 0022).

---

[5] To summarize, Metro underpaid Smith by $5.05 per hour for standard Bobcat
Operator work, by $19.92 per hour for overtime Bobcat Operator work, and paid
no fringe instead of $8.23 per hour. Metro underpaid Smith by $9.14 per hour for
standard Jackhammer Operator work, by $23.42 per hour for overtime
Jackhammer Operator work, and paid no fringe instead of $6.47 per hour. Metro
underpaid Smith by $11.55 per hour for standard Roller (trench) work, by $29.67
per hour for overtime Roller work, and paid no fringe instead of $8.23 per hour.
Metro underpaid Smith by $8.79 per hour for standard Flagman work, by $22.94
per hour for overtime Flagman work, and paid no fringe instead of $6.47 per hour.
*See* Summary Charts in Compl. at 13, 17, 20 (J.A. 0026, 0030, 0033).

5

Metro employed Smith on the Smithsonian NMAAHC contract from August 27, 2012 to November 13, 2012, as Flagman . Compl. at 16-17 (J.A. 0029-0030). Smith performed Flagman work that fell under the "Heavy Construction" schedule as defined by the Department of Labor. [6]  Compl. at 16, n.2 (J.A. 0029).  Under the Heavy Construction Schedule, the Davis Bacon Wage Determination provided for a standard rate of pay of $21.83 per hour, an overtime rate of pay of $42.45 per hour, and fringe of $6.47 per hour.  As on the City Market contract, Metro paid Smith substantially less that these mandatory rates.[7]

---

[6] The Department of Labor ("DOL") issues Davis-Bacon Act prevailing wages and benefits paid by the construction industry within specific localities. The DBA Wage Determinations ("WDs") are further classified by the nature of the construction projects performed, specifically listed as "Schedules": residential, building, highway and heavy construction.  Building Construction includes construction of sheltered enclosures with walk-in access for the purpose of housing persons, machinery, equipment or supplies; all construction of such structures; the installation of utilities and of equipment, both above and below grade levels; as well as incidental grading, utilities and paving. Heavy Construction includes those projects that are not properly classified as either "building," "highway," or "residential." Unlike these classifications, heavy construction is not a homogenous classification. Because of this catch-all nature, projects within the heavy classification may sometimes be distinguished on the basis of their particular project characteristics, and separate schedules may be issued for dredging projects, water and sewer line projects, dams, major bridges, and flood control projects. *See* DOL website http://www.wdol.gov/usrguide/sectionc.aspx#c4b.

[7] Smith was actually paid a standard rate of $13.04 per hour (underpaid by $8.79 per hour), an overtime rate of $19.56 (underpaid by $22.89 per hour), and an unknown fringe. *See* Chart. Compl. at 20 (J.A. 0033).

Defendants assert that the "Building Construction" Schedule applied to Smith's work, and, since there is no "Flagman" category on that schedule, he was classified and paid at an inapplicable catergory, under that schedule was paid at a substantially lower wage rate. Opp'n to Defs.' Mot. to Dismiss at 16 (J.A. 0288 ), Defs.' Mot. to Dismiss Mem. at 15 (J.A. 0217).

### C. National Zoo Project

Defendant HSU Builders was awarded a contract to perform heavy construction services on the National Zoo Project, and subcontracted a portion of contract work to Defendants Shirley and Metro Earthworks. Compl. at 9 (J.A. 0022). On or around November 29, 2012, Metro reassigned Smith to work at the National Zoo Project, where he worked as Flagman, Shoveler and in an Unskilled Laborer. Compl. ¶ 57 (J.A. 0032). Although the DBA wage determinations applied to this Contract, Metro continued to pay Smith substantially less than the applicable wage determinations. Smith's wage was lower than the DBA wage requirement regardless of whether the Heavy Construction or Building Construction schedule applied.[8]

_____

[8] Whether working as a Flagman, Shoveler or Unskilled Laborer, Metro paid Smith a standard hourly rate of $16.48 per hour, an overtime rate of $24.72, and an unknown fringe rate. The wage determination for Flagman and Unskilled Labor was $21.83 per hour (resulting in underpayment of $5.35 per hour), and overtime at $42.45 per hour (resulting in underpayment of $17.73 per hour). The wage determination for Shoveler was $18.09 per hour (resulting in underpayment of

On all three Contracts, Defendants regularly submitted required certified payrolls to the government, which was a condition of receiving payment. Compl. ¶¶ 2, 36, 40, 45, 48, 55, 59, 92 (J.A. 0017, 0023, 0025, 0027, 0028, 0031, 0033, 0045). The certified payrolls certified, in relevant part, that the employee was paid in accordance with applicable laws and regulations, including the Davis-Bacon Act. Compl. ¶¶ 2, 36, 40, 45, 48, 55, 59, 92 (J.A. 0017, 0023, 0025, 0027, 0028, 0031, 0033, 0045). Metro was aware, or acted in reckless disregard of the fact, that it paid Smith and other employees less than the applicable wage determination. Compl. ¶¶ 46, 56, 60 (J.A. 0027-28, 0032, 0034). Metro further submitted certified payrolls which were not compliant with Davis-Bacon wage determinations, and which were falsely certified, for the purpose of receiving payment from the government. Compl. ¶¶ 40, 45, 55, 59, 92 (J.A. 0025, 0027, 0031, 0033-34, 0045).

In September of 2012, while working on the Smithsonian NMAAHC contract, Smith reported to DOL's Wage and Hour Division that he was being paid less than the Davis-Bacon Act wage determinations required. Compl. ¶ 65 (J.A. 0035). In response to Smith's complaint, the DOL began investigating Clark and Metro's wages. Compl. ¶ 65 (J.A. 0035). The day after issuing the complaint to DOL, a Clark representative asked Smith to participate in a meeting attended by Clark, CSR JV and the Smithsonian NMAAHC compliance office ("Compliance

---

$1.61 per hour), and overtime at $34.49 per hour (resulting in underpayment of $9.77 per hour). *See* Chart, Compl. at 20 (J.A. 0033).

Office"), regarding his work and pay on the Smithsonian NMAAHC contract. Compl. ¶ 66 (J.A. 0035). The Compliance Office conducted hearings with Clark representatives and Smith in attendance. Compl. ¶ 67 (J.A. 0036). Smith never received a final report from the Compliance Office investigation but was made aware Smithsonian found in his favor. Compl. ¶ 69 (J.A. 0036). Smith spoke with several Clark representatives regarding his participation in the wage inquiry, but he never received payment for wages that investigation determined to be owed. Compl. at 23-24 (J.A. 0036-0037).

Shortly thereafter, on November 14, 2012, Defendants relocated Smith, and his team-members, off the Smithsonian NMAAHC Contract to a residential contract which was not subject to the higher Davis-Bacon wages. Compl. ¶¶ 72, 76 (J.A. 0038-0039). The relocation to a remote and residential project cost Smith financially in a drastic reduction in hourly rate and no fringe, as well as a substantially longer, more difficult and costlier commute. Compl. ¶¶ 79-80, 83 (J.A. 0040-0041). As Smith was and remains indigent, such a change to his work situation had severe consequences and contributed to Mr. Smith being at risk of losing his residence. Compl. at ¶ 85 (J.A. 0042).

2.    *Relevant Procedural History*

9

On January 2, 2013, Plaintiff/Relator Brian K. Smith filed a *qui tam* complaint in the United States District Court for the District of Maryland – Greenbelt Division.  The complaint alleged, in relevant part, that Defendants violated the Davis-Bacon Act, 40 U.S.C. § 3141, *et seq*., by failing to pay the statutorily required wages, overtime and fringe rates on several contracts. The Complaint further alleged that Defendants submitted false certifications to the government, in the form of certified payrolls, to receive payment for work on the Contracts, in violation of the Federal False Claims Act.

Subsequently, Mr. Miles, counsel for Mr. Smith in this matter, spoke by telephone with Patrick Blake, Assistant General Counsel at Clark Construction Group, LLC, mentioned the complaint and requested Clark cease its retaliatory actions against Mr. Smith. *See* Defs.' Mot. to Dismiss Mem. at 11 (J.A. 0213); Tr. 28:15 – 29:3 (J.A. 0440-0441).

The United States Department of Justice investigated the Plaintiff/Relator's allegations while the case remained under seal, but ultimately declined to intervene.  Defendants filed a Joint Motion to Dismiss ("MTD").  Plaintiff/Relator filed an Opposition to the MTD, and Defendants file their Reply.  An oral hearing was held on March 28, 2014, wherein Judge Titus dismissed all counts with Prejudice.

10

Appellant timely appealed the District Court's decision, and timely files Appellant's Brief and Appendix in accordance with FED. R. APP. PROC., Rules 4, 28, 30 and 32.

Prior to the underlying litigation, Mr. Smith lodged a verbal complaint with the Department of Labor in November 2012.[9] The DOL Administrator issued a ruling on April 29, 2014,[10] which stated that it would not issue a written decision, but that it was his "final decision that Shirley and [Metro] had not violated the Davis-Bacon Act at the Smithsonian NMAAHC or at the City Market at O Street…" This ruling was appealed on May 29, 2014, and a final decision on appeal is pending.

3.    *Rulings Presented For Review*

Plaintiff-Appellant appeals the ruling of the District Court granting Defendants' Joint Motion to Dismiss, which resulted in the Dismissal of the Plaintiff's Complaint with Prejudice, specifically the dismissal of Counts 1, 2 and 4. *See* Order Granting Defs.' Mot. to Dismiss (J.A. 0412).

LEGAL ARGUMENT

---

[9]  DOL Complaint File No. 1674426.
[10]  Ruling by DOL, Wage and Hour Division, Assistant Director Christopher Silva.

SUMMARY OF THE ARGUMENT

The District Court heavily emphasized the alleged seal violation as the primary basis for granting Defendants' Motion to Dismiss. Appellant appeals this decision on the grounds that (A) there was a factual dispute as to whether counsel's actions amounted to a seal violation, which should not have been decided on a Motion to Dismiss; (B) FCA's seal provision is not jurisdictional and violation does not require dismissal; and (C) the District Court failed to apply a balancing test to determine whether the extreme sanction of dismissal with prejudice was appropriate.

First, the Complaint was filed in camera in accordance with the FCA procedural requirements. It is disputed whether Counsels' actions amounted to a technical violation of the complaint remaining under seal. The District Court, in deciding the Motion to Dismiss, erred in finding that this point was not in dispute.

Even if the District Court properly found the seal provision was violated, the FCA provision on complaints remaining under seal are not jurisdictional. The violation of the seal thus does not require dismissal of the complaint. The District Court should have considered whether the alleged seal violation was remediable and curable before deciding to impose the severe sanction of dismissal with prejudice. The District Court further abused its discretion by not balancing all relevant factors in deciding what sanction to impose for the alleged seal violation.

12

Dismissing the Complaint with Prejudice is an extreme sanction, and not in proportion to the alleged violation.

Plaintiff/Appellant's second major argument is that the District Court properly had subject matter jurisdiction over the False Claims Act claims. The crux of this case is whether there is a cause of action before the District Court to bring a FCA claim alleging false certification arising from a DBA wage violation. A Davis-Bacon Act violation **may** form the basis of a FCA suit where contractor's statement may be determined to be false without regard to complex Davis-Bacon Act classification regulations. The Davis-Bacon Act does not preclude or preempt all FCA claims that happen to also be Davis-Bacon Act violations. In cases such as this, the Primary Jurisdiction doctrine need not be invoked, because the case does not involve highly technical determinations by the Department of Labor, and can be resolved without deferring to the agency's expertise.

Plaintiff's Complaint sufficiently met the pleading requirements for the False Claims Act Claim, which alleges fraudulent acts. The Plaintiff's complaint alleges that Defendants regularly submitted certified payrolls to the government, for the purpose of receiving payment, which falsely certified compliance with Davis-Bacon wage determinations.

Next, at the oral hearing for the Motion to Dismiss, when the allegations of insufficient pleading were raised, Plaintiff requested leave to amend its Complaint

13

to address the concerns regarding pleading requirements. This request to file an amended complaint – its first – was denied, which amounted to abuse of discretion.

<u>STANDARD OF REVIEW</u>

Appeal of a district court's grant of a motion to dismiss under Rule 12(b)(1) or (6) are reviewed *de novo. See, e.g., Suter v. United States*, 441 F.3d 306, 310 (4th Cir. 2006) (reviewing dismissal under 12(b)(1)); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 338 (4th Cir. 2006) (reviewing dismissal under 12(b)(6)). In reviewing 12(b)(6) dismissals, this Court must accept as true all of the Appellant's allegations and must construe factual allegations in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Discretionary decisions of the district court are reviewed for "abuse of discretion." *Pierce v. Underwood*, 487 U.S. 552, 558 (1988). Any factual findings on which the court relied are reviewed for clear error. *Lujan ex rel. United States v. Hughes Aircraft Co.*, 67 F.3d 242 (9th Cir. 1995).

<u>ARGUMENT</u>

I.    **District Court's Dismissal of Complaint with Prejudice for Alleged Seal Violation was in Error and an Abuse of Discretion.**

The District Court heavily emphasized the alleged seal violation as the primary basis for granting Defendants' Motion to Dismiss. Tr. 76:4-8 (J.A. 0488). Appellant appeals this decision on the grounds that (A) there was a factual dispute as to whether counsel's actions amounted to a seal violation, which should not have been decided on a Motion to Dismiss; (B) FCA's seal provision is not jurisdictional and violation does not require dismissal; and (C) the District Court failed to apply a balancing test to determine whether the extreme sanction of dismissal with prejudice was appropriate.

### A. Alleged Seal Violation is a Factual Dispute Not Properly Decided on Motion to Dismiss.

The District Court clearly erred in finding that:

> There does not appear to be **any dispute whatsoever** about the violation of the seal in this case. There is no need to provide for discovery or summary judgment or anything else of that nature when there is an undisputed violation of the requirement that the case remain under seal. The question is what is the appropriate response of this court to a violation of the seal.

Tr. 74:23 – 75:5 (J.A. 0486-0487) (emphasis added). Contrary to the District Court finding, Plaintiff/Relator did dispute whether counsel's actions amounted to a violation of the seal, in its Opposition to Defendants' Joint Motion to Dismiss, and again at the oral hearing. Opp'n to Defs.' Mot. to Dismiss at 14-15 (J.A. 0286-

15

87); Tr. 29 (J.A. 0441).[11]  In ruling on the Motion to Dismiss, such a factual

dispute should have been resolved in favor of the Plaintiff/Relator. *Erickson v.*

*Pardus*, 551 U.S. 89, 93 (2007); *Mylan Labs*, at 1134.

### B. FCA's Seal Provision is Not Jurisdictional and Dismissal of the Complaint is Not Appropriate Where Seal Violation Does Not Frustrate Purpose of the FCA.

Even assuming, *arguendo*, counsel's actions amounted to a seal violation,

such violation would not require the severe sanction of dismissing the complaint

with prejudice.  Seal provisions of the FCA are not jurisdictional and their

violation does not *per se* require dismissal of a *qui tam* complaint.  *Lujan*, 67 F.3d

at 242; *See United States ex rel. Pilon v. Martin Marietta Corp.*, 60 F.3d 995, 1000

(2d Cir.1995) (expressing reluctance to rule that the requirements of § 3730(b)(2)

are jurisdictional).  Agreeing that the provision was not jurisdictional, the United

States District Court for the Eastern District of Virginia determined that if the

service and filing requirements circumscribed courts' jurisdiction, it potentially

could frustrate the overarching purpose of the FCA, which is to prevent fraud

perpetrated by private parties against the government. *United States ex rel. Ubl, v.*

*IIF Data Solutions, et al.*, 2009 WL 1254704 at *3 (E.D. Va. 2009) (citing

---

[11]  Appellant's counsel did not dispute whether Mr. Miles wrote an email and placed a phone call to Defendant Clark Construction; it disputed whether these actions amounted to a seal violation in accordance with the Statutory language of 31 U.S.C. § 3730 and whether such circumstances require a dismissal. *See* Tr. 28-29; *See* Opposition to MTD at 14-15.

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) ("Congress intended that the False Claims Act ... and its qui tam action would help the government uncover fraud and abuse")).

No provision of the False Claims Act explicitly authorizes dismissal as a sanction for disclosures in violation of the seal requirement. *Lujan*, 67 F.3d at 245; *See* 31 U.S.C. § 3730(b)(2).

Defendants-Appellees note that "numerous courts have held that a relator loses the right to bring a statutorily-derived FCA action if the relator violates the seal requirements of the FCA." Defs.' Mot. to Dismiss Mem. at 10 (J.A. 0212).[12] However, all the cases Appellees cite for this proposition are distinguishable from the present case because the alleged seal violation in this case did not frustrate the purpose of the FCA. *See Id.*

The District Court in this case noted that "[t]he circumstances before the Court are somewhat similar to those faced by the Eastern District of Virginia in *Erickson ex rel. United States v. Am. Inst. Of Biological Scis.*, 716 F. Supp. 908,

---

[12] Citing *Erickson ex rel. United States v. Am. Inst. Of Biological Scis.*, 716 F. Supp. 908, 911 (E.D. Va. 1989) (complaint dismissed when relator failed to file complaint under seal and served it without court's approval); *United States ex rel. Fellhoelter v. ValleyMilk Prods., L.L.C.*, 617 F. Supp. 2d 723, 728 (E.D. Tenn. 2008) (court dismissed qui tam complaint that was filed under seal, but served on defendants); *United States ex rel. Le Blanc v. ITT Indus., Inc.,* 492 F. Supp. 2d 303, 305-08 (S.D.N.Y. 2007) (complaint not filed under seal; although not done in bad faith, failure to comply with FCA filing requirements frustrated intent of Act, requiring dismissal).

911 (E.D. Va. 1989) ("*Erickson*"). Tr. at 75:6-9 (J.A. 0487).  In *Erickson*, the *qui tam* relator failed to comply with current statutory filing requirements by failing to file the complaint *in camera* and failing to delay service of the complaint on the defendant, which violated the clear statutory language in 30 U.S.C. § 3730(b)(2).  Though the circumstances in the present case may be "somewhat similar" to the *Erickson* case, they are also clearly factually distinguishable because Plaintiff/Relator's complaint was filed *in camera,* remained under seal, and was not served on the Defendants until the government's request to lift the seal.

The *Erickson* Court recognized that "Courts apparently draw a **sensible distinction between cases in which filing and service errors can be cured and those in which they cannot**. In the former cases, courts typically **give delinquent parties the opportunity to correct their mistakes**." *Id.* (emphasis added).  Dismissal may be supportable where the "failure to comply with the filing and service provisions **irreversibly frustrates the congressional goals underlying those provisions**." *Erickson*, 716 F.Supp. 908, 912 (emphasis added).  The Relator's actions in that case - completely failing to comply with two of the procedural requirements – "frustrated Congress' primary and secondary goals. And, **significantly, this result [could not] be cured or remedied**." *Id.* (emphasis added).

18

Although at oral hearing the District Court concluded that "under the circumstances of this case that the violation of the seal was a very serious matter," the Court made no determination as to whether the alleged seal violation **actually frustrated the purpose of the FCA** and whether any error by Plaintiff's counsel could be cured. *See* Tr. 76:5 (J.A. 0488). It did not. The Government conducted its investigation, and concluded it would not intervene in this case. Tr. 64:12-14 (J.A. 0476).

## C. District Court's Failure to Consider Less Severe Sanctions was Abuse of Discretion.

The District Court wrongfully concluded the seal was violated and that the violation of the seal was jurisdictional, and next failed to consider whether the violation of the seal could be cured or remedied. The District Court imposed the most severe sanction available and dismissed the Complaint with prejudice. This action unfairly penalizes the Plaintiff/Relator and rewards the Defendants, which is contrary to the purpose of, and weakens, the FCA.

When constructing a sanction for violating the FCA seal provision, a court must consider whether and to what extent the government was actually harmed by violation, relevant severity of the violation, and presence or absence of bad faith or willfulness. *Lujan*, 67 F.3d at 245. Other factors to consider include: the existence of extraordinary circumstances, presence of willfulness, bad faith, or fault by offending party, efficacy of lesser sanctions, relationship or nexus between

19

misconduct drawing dismissal sanctions and matters in controversy in case, and where appropriate, prejudice to party victim of misconduct, and government's interests at stake. *Id.* The United States District Court for the Eastern District of Virginia examined the statutory language (and the absence of a jurisdiction limitation), then the legislative history of the FCA, stating "there is no suggestion in the legislative history that the provision was intended to benefit the defendant in any way, except to inform the defendant whether its opponent is the relator or the federal government." *United States ex rel. Ubl*, 2009 WL 1254704 *at *3* (citing *United States ex rel. Milan v. Regents of the University of California*, 912 F.Supp. 868, 890 (D. Md. 1995)). Defendants-Appellees recognize in their Motion to Dismiss that some courts employ a balancing test to determine whether dismissal is warranted for a breach of the FCA's seal provisions. Defs.' Mot. to Dismiss Mem. at 10 (J.A. 0212).

The Ninth Circuit notes the purpose of *qui tam* actions is to encourage more private false claims litigation. *Lujan*, 67 F.3d at 245. The other side of the balance recognizes the need to allow the Government an adequate opportunity to fully evaluate the private enforcement suit and determine both if that suit involves matters the Government is already investigating and whether it is in the Government's interest to intervene and take over the civil action. *Id.* The seal provision provides an appropriate balance between these two purposes by allowing

20

the *qui tam* relator to start the judicial wheels in motion and protect his litigative rights, while allowing the government the opportunity to study and evaluate the relator's information for possible intervention in the *qui tam* action or in relation to an overlapping criminal investigation. *Id.* When the seal provisions are violated, this balance cannot be disregarded. Rather, the district court must keep in mind *both* sides of the balance when constructing a sanction for a violation of the seal provision.

The District Court here apparently weighed only one factor, stating only that it "looked to the purpose behind the sealing requirement, primarily to allow the government first to ascertain in private whether it was already investigating the claims and then to consider whether it wished to intervene and to prevent alleged wrongdoers from being tipped off that they were under investigation. *See* Tr. 75:11-17 (J.A. 0487).[13]

The District Court not only failed to adequately weigh the interests of the government and assess what harm, if any, was done, but the Court ignored the government's opinion that any defect was curable and remediable. The government expressly stated that lifting the seal would serve the government's

---

[13] The District Court further makes the erroneous finding of fact that the "accusations were made directly by plaintiff's counsel to defense counsel in what appears to be an effort to bolster the significance of the claim that they are making of wage violations." Tr. 75:25-76:3 (J.A. 0487-0488). Such conclusion is an inappropriate interpretation of conflicting factual assertions when considered in a Motion to Dismiss.

interests by furthering " the investigation because the government will then be able to ask the defendants to respond to the allegations." U.S. Mem. Mot. Partially Lift Seal at 5 (J.A. 000169). The government further described its benefits for lifting the seal when it stated that, "[B]y obtaining the defendants' response at a very early stage of the investigation, it may allow the government to better evaluate the relator's claims and speed the determination about whether the government will intervene in this case. U.S. Mem. Mot. Partially Lift Seal at 5 (J.A. 000169). The Court also ignores the extent of the any disclosures which were not public, lack of bad faith, severity of the dismissal sanction, and whether alternative remedies were available. As the Appellant noted in its Opposition to the Motion to Dismiss, and repeated in oral argument, the Department of Justice investigation continued forward upon the District Court's grant of its request to provide Defendants with a copy of the Complaint, stating that disclosing the Complaint to Defendants in that situation would actually "further the [government's] investigation… By obtaining the defendants' response at a very early stage of the investigation, it may allow the government to better evaluate the Relator's claims and speed a determination about whether the government will intervene in this case." Opp'n to Mot. to Dismiss at 15 (J.A. 0287); Tr. 31:9-16 (J.A. 0443).

**II.    District Court Properly had Jurisdiction over False Claims Act claims, and Dismissal of FCA claims for lack of jurisdiction was in error.**

## A. Davis-Bacon Act Violation May Form the Basis of a False Claims Act Claim.

The true crux of this case is whether there is a cause of action before the District Court to bring a FCA claim alleging false certification arising from a DBA wage violation. A Davis-Bacon Act violation **may** form the basis of a FCA suit where contractor's statement may be determined to be false without regard to complex Davis-Bacon Act classification regulations. *United States ex rel. Windsor v. DynCorp, Inc.*, 895 F.Supp. 844, 851 (E.D. Va. 1995) ("*Windsor*"). This is the situation in the present case.

Defendants rely heavily upon *Windsor* to support their assertion that "a claim that a contractor misclassified the duties of a worker pursuant to the [DBA] wage determinations is within the sole province of the [DOL] and is not an appropriate subject of a FCA claim." Defs.' Mot. to Dismiss Mem. at 13 (J.A. 0215). *Windsor* states that a "Davis-Bacon Act worker classification dispute, by itself, is not an FCA claim because such disputes must be resolved by the [DOL]." *Windsor,* 895 F.Supp. at 851. DOL Regulations provide that disputes over the proper classification of workers must be resolved according to the regulatory procedures set forth, and "disputes over the proper classification of workers under a contract containing Davis-Bacon provisions must be referred to the Secretary for determination." 29 C.F.R. § 5.11(a), 5.5(a)(9); *Windsor*, 895 F.Supp. at 851 (internal cites omitted).

23

This is not the end of the inquiry, however. As the *Windsor* Court emphasized:

> …the [DOL] has sole responsibility for resolving classification disputes under the [DBA], [that] in no way suggests that violators of the [DBA] enjoy blanket immunity from FCA liability. They do not. **Where the contractor's statement may be determined to be false without regard to the complex [DBA] classification regulations, then a [DBA] violation may form the basis of an FCA suit.** That is, where the 'falsity' of the false statement is not dependent on interpretation and application of those regulations, the current obstacle to FCA liability disappears."

895 F.Supp. 852 (emphasis added). The Court continued, "Accordingly, the **[DBA] by no means precludes or preempts all FCA suits for false claims that happen also to be [DBA] violations**." *Id.* at 853 (emphasis added).

The Defendants failed to note the primary distinction between *Windsor* and the present case, which is that in *Windsor,* it was "**impossible to determine** whether DynCorp (the government contractor) submitted a false claim to the government without first determining whether DynCorp actually misclassified an employee in a given instance." *Windsor,* 895 F.Supp. at 851.

Generally, courts apply primary jurisdiction in cases involving technical, intricate questions of fact and policy that Congress has assigned to a particular agency. The Primary Jurisdiction Doctrine[14] does not delegate this matter to DOL

---

[14] Primary Jurisdiction Doctrine allows courts to refer matter to the relevant agency whenever enforcement of the claim requires the resolution of issues which, under a

because Plaintiff-Appellant's claim does not require resolution of issues which have been placed in special competence of the DOL. The facts at issue in this case were not highly technical, and did not require DOLs expertise. In fact, DOL publishes its definitions of what type of work constitutes "Skilled" labor and whether a project is "Heavy" or "Building" construction.  (Heavy Construction schedule was displayed on a poster at relevant job sites.)  Compl. At 24, 51 (J.A. 000037, 000064).

The courts have drawn a dichotomy between a contractor's **misrepresentation of wages** and its **misclassification of workers**, which is illustrated by the *Windsor, Circle C* and *Farfield* cases. *Windsor* involved allegations of **misclassification of workers**, meaning qui tam plaintiff alleged that the contractor intentionally misclassified the labor category of, and thus underpaid, its employees.  To illustrate,

> [Plaintiff] alleged that employees were classified as "Laborers", where under the [DOL] policy regarding the work they were performing, they should have been placed into one of the many subclasses for skilled mechanics, such as "Electrician" or "Carpenter". So classified, these employees would have been entitled to higher wages…
>
> *Windsor,* 895 F.Supp. at 849.

---

regulatory scheme, have been placed within the special competence of an administrative body. *United States ex rel. Wall v. Circle C Constr., L.L.C.*, 697 F.3d 345, 352 (6th Cir. 2012) ("Circle C").

In contrast, the *Circle C* case illustrates a pure **misrepresentation of wages** situation. There, all of Defendant's employees performed specific electrical work as specifically defined by the DBA and the contract. *Circle C*, 697 F.3d at 348. Despite requiring only electrician labor, the contractor paid the employers less than the required local Davis-Bacon wage for electricians, but submitted certified payrolls which falsely certified compliance with Davis-Bacon wages. *Id.* In *Circle C*, the Court held that the doctrine of primary jurisdiction did not foreclose plaintiff's FCA suit alleging DBA violations because "there are not complex Davis-Bacon classification regulations in this action." *Circle C,* 697 F.3d at 354.

In *Farfield*, the court connected the other two cases, found that although the case ultimately was a dispute "simply whether the Defendant misclassified the workers into categories, for which the DOL has previously determined the type of work within each classification," the "alleged falsity of the false statement is not dependent on interpretation of classifications and wage determinations," and thus jurisdiction was appropriate in the court system. *United States ex rel. Int'l Brotherhood of Electrical Workers, Local Union No. 98 v. The Farfield Co.*, 2013 WL 3327505, *7 (E.D. Pa. July 2, 2013).

Defendants attempt to frame the present case as purely about misclassification – that is, entirely revolving around a technical determination that a worker should have been classified as a particular labor category. Defs.' Mot. to

26

Dismiss Mem. at 13 (J.A. 0215). This is not the extent of the inquiry. Rather, in some instances Defendants certified that it paid DBA prevailing wages, where it paid Defendant lower than any applicable DBA wage would have been. Laborers' wages, including Smith's, were misrepresented. This is because, on the Smithsonian NMAAHC Contract, Smith was supposed to be paid as a Flagman under the Heavy Construction Schedule, but was instead paid at an inapplicable labor category under the Building Construction Schedule. Compl. at 16 (J.A. 000029). Defendant Clark used the wrong Construction Schedule. Opp'n to Mot. to Dismiss at 11-12, 16-18 (J.A. 000283-284, 000288-290). At City Market, Smith was paid at a rate that was not supported by either Construction Schedule. Compl. ¶ 43 (J.A. 0026). At Smithsonian NMAAHC, Smith was not paid according to the correct Construction Schedule. Compl. ¶¶ 50-53 (J.A. 0030-0031). At the National Zoo Project, Smith was paid at a rate below the applicable wage rate. Compl. ¶ 57 (J.A. 0032).

The determination of which is the correct labor category for the work performed at various times by Smith does not require a highly technical application of DOL determinations. The DOL offers guidance on definitions of labor categories, and applying them directly to Smith's activities on the various jobsites does not require expertise beyond that of a regular fact-finder. Plaintiff/Appellant made sufficient allegations in its complaint and Opposition to Defendants' Motion

27

to Dismiss that when viewed in favor of the Plaintiff/Appellant, determining the falsity of the false statements (certified payrolls that falsely certify compliance with DBA wages) **is not dependent on classifications and wage determinations.**

Similar to *Farfield,* Plaintiff/Appellant submitted facts that (1) are sufficient to determine that Metro submitted a false claim through its falsely certified payroll submission without first determining whether there was a misclassification; and (2) should further survive a motion to dismiss viewing all facts favorably for the Plaintiff. Specifically, Plaintiff/Appellant was, at various times on the relevant Contracts, paid at a rate that was lower than the app licable DBA wage, no matter what labor category applied. See, e.g., Opp'n to Mot. to Dismiss at 12 (J.A. 0284) (Smith paid lower on National Zoo Project than either DBA Construction Schedule mandated). The Court need not defer to the DOL to conclude that this violates the DBA.

Second, on the Smithsonian NMAAHC Contract, there is a factual dispute as to which Construction Schedule applied.  Viewing the facts favorably to Plaintiff/Appellant, the Heavy Construction Schedule was applicable and Smith was paid at a rate that was lower than the applicable DBA wage, no matter whether he was considered "Unskilled Labor" or "Flagman."

## B. FCA Claim satisfies pleading requirements.

28

To satisfy the particularity requirement for pleading fraud, a plaintiff asserting a claim under the FCA "must, at a minimum describe the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." 31 U.S.C. § 3729(a)(1)(A); Federal Rules Civil Procedure, Rule 9(b); *United States ex rel. Nathan v. Takeda Pharms. North America, Inc.*, 707 F.3d 451, 455-56 (4th Cir. 2013). A cause of action brought pursuant to FCA subsection prohibiting use of false record or statement to get a false or fraudulent claim paid requires proof: (1) that the defendant make a false statement or create a false record with actual knowledge, deliberate ignorance, or reckless disregard for the truth or falsity of the information; (2) that the defendant have submitted a claim for payment to the federal government; (3) that the defendant's false statement have been made with the purpose of getting a false or fraudulent claim paid or approved by the government; and (4) that the false statement or record have been material to the government's decision to make the payment sought in the defendant's claim. *Circle C,* 697 F.3d 345; 31. U.S.C. § 3729(a)(2). FCA violation requires scienter but not proof of intent to defraud. *United States ex rel. Howard v. Lockheed Martin Corp.*, 2014 WL 1612165 at *5 (S.D. Ohio March 25, 2014) (citing *Circle C*, 697 F.3d at 356).

In its Complaint, Plaintiff/Appellant alleged:

Defendants, in connection with numerous government contracts, knowingly made actual and/or implied representations of material facts regarding compliance with the Davis-Bacon Act wage and fringe pay requirements, among other things, **in certified payrolls submitted to the government (which falsely represented Davis-Bacon compliance), and, in at least one, U.S. government investigation**. Defendant's [sic] knowingly (or with reckless disregard for the truth) made these representations with the intent to deceive the government in order to profit (e.g., retaining the difference between the amount they claim was paid to workers and they amount that was actually paid or to prevent from having to equitably adjust their contract to account for the increased costs associated with Davis-Bacon Act requirements).

Compl. ¶ 104 (J.A. 0048) (emphasis added).

Plaintiff is not merely suggesting an inference that false claims were presented to the government for payment. *See ex rel. Nathan*, 707 F.3d at 456. Plaintiff asserts that each certified payroll submitted for payment to the government by Clark, Shirley and Metro, were false and each certified payroll constitutes a false claim. Defendants argue that "Relator has not alleged that compliance with the [DBA] has any impact of any payment or condition of payment by the government under the contracts at issue. As a result, Relator has failed to plead a claim under the FCA." Defs.' Mot. to Dismiss Mem. at 14-15 (J.A. 0216-17). The Complaint sufficiently alleged that (false) certified payrolls were submitted to the government for the purpose of profiting from those false representations. Whether there is a factual defense to this allegation is not a

question appropriate for resolution in a Motion to Dismiss. The District Court

failed to construe this in Plaintiff's favor in weighing the Motion to Dismiss.

### C. District Court's Denial of Oral Motion for Leave to Amend Pleadings was Abuse of Discretion.

Federal Rule of Civil Procedure 15(a)(2) provides that a court "should freely

give leave" to amend a complaint "when justice so requires." *United States ex rel.*

*Nathan v. Takeda Pharms. North America, Inc.*, 707 F.3d at 461 (denying leave for

plaintiff to amend complaint, but plaintiff had filed an amended complaint three

previous times and failed to address the pleading deficiencies despite having notice

of them).  Plaintiff/Appellant had not previously requested leave to file an

amended complaint, but requested this at the Oral Hearing before the District Court

to address the Court's concerns over pleading requirements.  Tr. 59:15 (J.A. 0471).

### III.    The District Court erred in finding that there was no sufficient allegation of a retaliation claim under the False Claims Act in Count 4.

To prove retaliation under the False Claims Act, 31 U.S.C. § 3730(h), a

plaintiff/relator must demonstrate: (1) the plaintiff/employee engaged in "protected

conduct," defined as lawful acts in furtherance of an FCA action, (2) the employer

knew about the protected conduct, and (3) the employer retaliated against the

employee because of the protected conduct, respectively.

(1)  The Plaintiff clearly engaged in protected conduct, as alleged in the

Complaint ¶ 65, et seq. (J.A. 0035) when he reported to the Department of Labor

31

the discrepancies between the pay rates on the DBA poster at his work site and the

pay rates he was actually receiving.  He further engaged in protected activity when

he actively participated in the DOL/Smithsonian compliance office investigation

and joint meetings between employees and representatives of the Defendants.  At

the conclusion of the Smithsonian investigation, Mr. Frederick Wright of the

Smithsonian Compliance Office informed Mr. Smith that the employer did not pay

him the wage and fringe rates required by the Davis-Bacon Act for the positions he

performed at the Smithsonian NMAAHC.  Mr. Smith then further engaged in

protected conduct when he tried to collect the back wages from Defendants.

Compl. ¶ 68, et seq. (J.A. 0036).

(2) Defendants (operating jointly and severally through a joint venture

business relationship) knew[15] Mr. Smith was engaging in protected activity that

could lead to an FCA claim.  Notably, the Relator was not required to directly alert

the Defendants that his inquiries into DBA violations could lead to litigation or

viable action specifically "under the FCA," or that he was specifically "pursuing a

---

[15] Mr. Dubois participated in this investigation which involved Clark, Shirley, and/or Shirley-Metro Human Resources and Compliance representatives. Mr. Dubois maintains Frederick Wright of the Smithsonian compliance office, on multiple occasions, made him aware of the fact that the Smithsonian compliance representatives had determined that he was not being paid what a flagman was entitled to under Heavy and/or Building Construction Schedules. When Mr. Dubois continued to seek backpay in relation to this decision, Mr. Dubois, ultimately, spoke to, among others associated with his employers, Mr. Anthony Brown in Clark's Human Resources Department and Ms. "Kerry" at Shirley, both of whom, were concerned about perceived retaliation against Mr. Dubois for his participation in the Smithsonian NMAAHC compliance office review of his employers' Davis-Bacon noncompliances.

*qui tam* action", and in fact to impose such a requirement would directly contradict the initial requirements of non-disclosure in a *qui tam* action.

A relator/employee does not need to be familiar with the FCA or even know about the FCA and its provisions; it is enough that the investigation involves matters which are, or reasonably could be calculated to be, "viable actions under the FCA." *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir. 1996), cert. denied, 519 U.S. 1115 (1997); *Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 867 (4th Cir. 1999). According to the Hopper decision, knowledge can be express or implied. *Id.* Relator further did not need to know precisely what his investigation would yield. Protection under the FCA exists while the employee is engaged in gathering information about a possible FCA violation and putting the pieces of the puzzle together. *Neal v. Honeywell, Inc.*, 33 F.3d 860, 864 (7th Cir. 1994). The employee is not required to have gathered all of the evidence by the point in time when the retaliation occurs. *United States ex rel. Yesudian v. Howard University*, 153 F.3d 731, 739-40 (D.C. Cir. 1998).

Defendants participated in joint investigation meetings with Smith in attendance, and admitted in oral argument that if an employee alleges that he had been underpaid under the Davis Bacon Act, it was therefore possible that the government had been mischarged. Tr. 22 (J.A. 0434). Defendants also admit in oral argument that "protected activity does include activity in furtherance of an

investigation," and further that the Complaint includes allegations that "the Relator was investigating Davis-Bacon Act violations."     Tr. 22:3-4, 7 (J.A 0434).

Under the *Hopper* and *Neal* rulings, Plaintiff was not required to connect the dots for the Defendants or to tell them that each time Defendants submitted invoices to the government which they certified to be DBA compliant (as required under the underlying contract), when they were not DBA compliant, each invoice submission could support an FCA claim for fraud.   Thus, Mr. Smith's efforts to investigate and collect the correct wages, since he was not being paid in accordance with DBA standards, constituted matters which reasonably could be calculated to be "viable actions under the FCA." *Hopper*, at 1269.  Thus, Mr. Smith participated in protected acts about which Defendants knew.

(3)    Defendants retaliated against Mr. Smith when just after the Smithsonian investigation concluded that Defendants owed Mr. Smith back wages, Defendants transferred Smith to a location that more than doubled his commute cost and time, decreased his wages by $9/hour (significant for someone living in and out of homelessness to begin with), and separated his team (those cooperating in the investigation), and caused other hardships to this Relator.  Compl. ¶¶ 76, 81-85 (J.A. 0039, 0041-0042).  Significantly, Defendants took Smith off the Smithsonian NMAAHC before his work was completed, just after the issuance of the Smithsonian Compliance oral decision that the employer did violate the DBA.

34

In fact, in this case, the defendant employer retaliated against the Mr. Smith (and, as alleged in the Complaint, at least a few of his co-workers) because of the protected conduct. All that is required for retaliation is that the employer take adverse action against the employee, which constitutes action a reasonable employee finds materially adverse: Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in terms and conditions of employment (because of acts done by the employee in furtherance of an action under the FCA). 31 U.S.C. § 3730(h). To have one's pay decreased by $9 per hour, and commuting time and expenses more than doubled, are clearly materially adverse to a reasonable construction employee.

Thus we request that this Court find that the trial court's dismissal of the FCA retaliation claims was in error, and that the order be reversed and remanded, and Defendants' motion to dismiss this claim denied. If this court finds that any of Plaintiff's allegations on this count fall short, the appropriate remedy is to remand and grant Plaintiff leave to amend.

**IV.  The District Court's Order Awarding Costs to Defendants Constituted an Error of Law and Abuse of Discretion.**

In the lower court's written Order in this case, the Judge "ORDERED, that judgment for costs be entered in favor of Defendants". Defendants made no motion requesting costs and provided no evidence of what their costs may have been. The Court provided no oral or written explanation of exactly what such costs

35

included, nor did the Court provide any opportunity for addressing such issues during oral argument. In fact, the question of Defendants' costs did not arise during oral argument as it was never raised by the Defendants or the Court. The Court also provided no rationale for awarding costs to Defendants, and since the issue was never raised by the parties, Plaintiff had no opportunity to offer opposing arguments to such an award. For these reasons, Plaintiff avers that the trial court's award of costs to Defendant was in error as a matter of law and abuse of discretion, and we respectfully request that the order of costs be reversed.

If for some reason this Court decides not to reverse the trial court's order for costs to Defendants based on the above, we offer additional arguments as follows: Defendants should have had no "costs" (as the term is typically used in courts) at the trial court motion to dismiss phase, because Plaintiff paid all court costs and service of process costs, there were no expert witness expenses at that stage, and discovery had not commenced. Hence any cost award should be in the amount of zero dollars ($0.00). Furthermore, it is blatantly unfair to award costs against an indigent individual, hourly construction worker, when he is up against nine large companies who shared joint counsel and costs and are clearly in a superior position of power and financial strength -- especially where the facts alleged in the Complaint describe the financial hardship Mr. Smith is under (including periods of homelessness), where at least one level of investigation (by the Smithsonian) had

previously determined that Plaintiff had been underpaid in violation of the Davis

Bacon Act, and where the Plaintiff proceeded in this action in a good faith effort to

obtain the wages and benefits to which he is entitled. He is seeking to enforce his

rights, and not merely to harass. Notice there are no allegations that Plaintiff

published information about this case anywhere (no efforts to defame defendants),

and it is clear from the record that Plaintiff has never sought any harm to

Defendants. He has only, and consistently, sought to obtain pay for work he

performed for Defendants' direct benefit, and at the required wage and benefit

rates. Defendants never alleged that Plaintiff acted to harass, or that his claims

were clearly frivolous, clearly vexatious, or brought primarily for purposes of

harassment. Thus Plaintiff never had an opportunity to respond to such non-

existent arguments, the Court never heard such arguments or requests from any

party, and never found such grounds existed for an award of costs.

　　For these additional reasons, Plaintiff/Appellant avers that the trial court's

award of costs to Defendant was in error, as a matter of law and abuse of

discretion, and we respectfully request that the order of costs be reversed.


## CONCLUSION

　　In conclusion, for the reasons set forth above, Plaintiff-Appellant

respectfully asks that this Court find:

A.    That the District Court erred in granting Defendants' Joint Motion to Dismiss; and

B.    Order that the District Court's decision be **REVERSED** and the case be permitted to proceed to trial on counts 1, 2 and 4, and

C.    Order that the District Court's award of costs to Defendants be **REVERSED.**

Although it is our position that the trial court holds full jurisdiction over this case, if this Court finds any reason to resort to the Department of Labor on any matters, this Court should order those matters stayed, not dismissed.

In the alternative, to the extent this Court finds any deficiencies in Plaintiff's pleadings, Plaintiff-Appellant respectfully asks that this Court find:

D.    That the District Court erred in granting Defendants' Joint Motion to Dismiss; and

E.    That Plaintiff be granted leave to amend its complaint as requested in the oral hearing, and

F.    Order that the District Court's award of costs to Defendants be **REVERSED.**

Respectfully submitted,

/s/ Jerry A. Miles, Esq.
Jerry A. Miles, Esq.
jmiles@dealeservices.com
DEALE SERVICES, LLC
One Research Court, Suite 450
Rockville, MD 20850
Tel. 240-475-2750

38

*Counsel for Plaintiff-Appellant*

| Labor Category | Davis Bacon (DB) Hourly Rate | Hourly Rate actually Paid | Underpaid by: | DB Overtime | Overtime Actually Paid | Underpaid by: | DB Fringe | Fringe Actually Paid | Generally[16] Underpaid by: |
|---|---|---|---|---|---|---|---|---|---|
| **CITY MARKET** | | | | | | | | | |
| Bobcat Operator | $ 23.93 | $ 18.88 | $ 5.05 | $ 48.24 | $ 28.32 | $ 19.92 | $ 8.23 | $ - | $ 8.23 |
| Jackhammer Operator | $ 22.18 | $ 13.04 | $ 9.14 | $ 42.98 | $ 19.56 | $ 23.42 | $ 6.47 | $ - | $ 6.47 |
| Roller (Trench) | $ 28.61 | $ 17.06 | $ 11.55 | $ 55.26 | $ 25.59 | $ 29.67 | $ 8.23 | $ - | $ 8.23 |
| Flagman | $ 21.83 | $ 13.04 | $ 8.79 | $ 42.50 | $ 19.56 | $ 22.94 | $ 6.47 | $ - | $ 6.47 |
| **SMITHSONIAN NMAAHC** | | | | | | | | | |
| Flagman | $ 21.83 | $ 13.04 | $ 8.79 | $ 42.45 | $ 19.56 | $ 22.89 | $ 6.47 | $ - | $ 6.47 |
| **NATIONAL ZOO** | | | | | | | | | |
| Flagman | $ 21.83 | $ 16.48 | $ 5.35 | $ 42.45 | $ 24.72 | $ 17.73 | $ 6.47 | $ - | $ 6.47 |
| Unskilled Labor | $ 21.83 | $ 16.48 | $ 5.35 | $ 42.45 | $ 24.72 | $ 17.73 | $ 6.47 | $ - | $ 6.47 |
| Shoveler | $ 18.09 | $ 16.48 | $ 1.61 | $ 34.49 | $ 24.72 | $ 9.77 | $ 6.47 | $ - | $ 6.47 |

[16] Mr. Smith was entitled to $2.80 fringe at the rate Defendants Shirley and Metro Earthworks paid him at Smithsonian NMAAHC. He was not paid all of the fringes he was entitled even at that rate, which was not the applicable rate he was owed. fMr. Smith had been paid as a Skilled Labor flagman under the Heavy Construction Schedule then he would have been entitled to a basic rate of pay of $21.83, a fringe rate of 6.47 and an overtime rate of $32.75. At a fringe rate of $6.47 fringe rate for heavy construction flagman services, Brian Smith would have been entitled to a $1035.20 for four consecutive forty hour work weeks, but , Mr. Smith was paid less than $200.00 for an entire quarter and less than $127.61 from 10/22/12 to 11.25.12.

At City Market, Mr. Smith was owed fringes and although the exact fringe rate unknown, however, regarding fringe payments, during the period of 4/23/12 to 05/27/12, the Shirley Field Payroll Contributions to the Mr. Dubois' Clark Field Retirement Plan were only $41.90. Mr. Dubois' paystubs show he, generally, worked more than forty-hours per week during this period while working at different rates of pay for the above-referenced positions and his Paycheck Review & Void statements from his employers show, he earned $581.59 (4/22/12-4/27/12), $441.12 (4/29/12-5/04/12), $505.72 (5/06/12-5/11/12) and $707.99 (5/13/12-5/18/12). Id. But, even despite the sample fringe calculations above (which were calculated at the lowest rate of fringe payments available under the Heavy/Building Schedules and which his employers allege to have been paid), Mr. Smith only received $41.90 in fringe payments for this entire period.

# CERTIFICATE OF SERVICE

I certify that on  6/15/2014          the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

6/15/2014
_____
Signature

_6.15.2014_____
Date

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 14-1406    Caption: Brian K Smith, et al. v. Clark/Smoot/Russell, JV, et al.

### CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[✓]  this brief contains ____10360____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[ ]  this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[✓]  this brief has been prepared in a proportionally spaced typeface using
Microsoft Word _____ [*identify word processing program*] in
Times New Roman, Size 14 _____ [*identify font size and type style*]; **or**

[ ]  this brief has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) Jerry A. Miles, Esq. _____

Attorney for Plaintiff-Appellant _____

Dated: 06/16/2014 _____

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
**CERTIFICATE OF CONFIDENTIALITY, LOCAL RULE 25(c)**

No. _____14-406_____    Caption: _Brian Keith Smith v. United States of America ex. rel. Brian K. Smith_

Appellant (Brian Keith Smith via undersigned counsel)

(appellant, appellee, petitioner, respondent, other)

certifies the following information regarding sealing of the document(s) described below:

1. Identify document(s) filed (e.g., sealed appendix volume, sealed version of brief):

   Sealed Appendix Volume

2. Is sealing of document(s) necessary?

   ☐ No
   ☑ Yes, to protect material sealed under the Privacy Policy for Electronic Case Files, or by statute, rule, regulation, or order

3. Date(s) of order(s) sealing the material or, if there is no order, the authority relied upon to treat the material as sealed:

   January 29, 2013

4. Terms of order sealing the material, including who is permitted access to sealed material (if filed ex parte, document must be marked SEALED and EX PARTE):

   Counsel for plaintiff, defendants and the government have been permitted access to sealed material.

5. (For SEALED APPENDIX) Sealed record material has been separated from any unsealed record material and placed in a separate, sealed volume of the appendix.

   ☑ Yes

6. (For SEALED BRIEFS, SEALED DOCUMENTS) Two versions of document are filed: Sealed version with sealed material highlighted and public version with sealed material redacted.

   ☑ Yes

_____06/15/14_____                         _____
       (date)                                      (signature)

02/05/2014  SCC